IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| QUEEN AKHENATEN II MONTGOMERY BEY, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:24-cv-1809-D-BN |
| JOHN C. CRUEZOT, | § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Queen Akhenaten II Montgomery Bey ("Montgomery Bey"), providing an address in Dallas, Texas, filed a *pro se* complaint against Defendant John C. Cruezot, the Dallas County District Attorney, a complaint (along with other filings in this case) indicating that Montgomery Bey may identify with the Moorish sovereign citizen movement, and in which Montgomery Bey alleges that Cruezot "has no right to govern over my affairs" because "we're not in the same jurisdiction and he is in conflict of interest b/c he has [a] financial interest in the case b/c he went to the same university I sued." Dkt. No. 3 at 1.

These allegations appear to be related to Montgomery Bey's apparent attempt to record her supposed right to real property in Dallas County. *See id.* at 2 ("In good faith I have put in my documents with due diligence to correct and rectify the rights of my due process rights secured under the first national constitution fold of government. Pursuant to the stare decisis law. However this certain someone discriminatory behavior dismissed my true nationality and possessions of the present

Moroccan Empire. According to what the Dallas County Clerk of the Commissioner Court building told me and claimed that in order for me to exercise my rights regarding submitting/recording/filing my real property documents I had to receive permission from the District Attorney John Creuzot."); *see also Bey v. Bray*, No. 4:22-CV-933-SDJ-KPJ, 2023 WL 5987393, at *5-*7 (E.D. Tex. Aug. 1, 2023) (The Moorish movement asserts roots in the adherents' ancestors allegedly being the Moors of Africa and the Iberian Peninsula. *See El Ameen Bey v. Stumpf*, 825 F. Supp. 2d 537, 540 n.1 (D.N.J. 2011). 'Bey,' as attached to the end of Plaintiff's name, and 'El 'refer to the African tribes from which the Moors believe black people are descended.' *Id.* at 540 (internal quotation and quotation marks omitted)."), *rec. adopted*, 2023 WL 6162742 (E.D. Tex. Sept. 21, 2023).

Senior United States District Judge Sidney A. Fitzwater referred this lawsuit to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference.

After reviewing the complaint, the undersigned questions whether there is subject matter jurisdiction and, given the circumstances of this case, enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss this action for lack of subject matter jurisdiction.

These findings and conclusions provide Montgomery Bey notice as to the jurisdictional deficiencies. And the ability to file objections to the undersigned's recommendation that this case be dismissed for lack of jurisdiction (as further explained below) offers Montgomery Bey an opportunity to establish (if possible) that

the Court does have subject matter jurisdiction.

## Legal Standards

"Jurisdiction is the power to say what the law is." *United States v. Willis*, 76 F.4th 467, 479 (5th Cir. 2023). So consideration of "[j]urisdiction is always first." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) (citation omitted).

And, because "'[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute,'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), "subject-matter delineations must be policed by the courts on their own initiative even at the highest level," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (citations omitted).

Montgomery Bey chose to file this lawsuit in federal court and, by doing so, undertook the burden to establish federal jurisdiction. *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." (cleaned up)); *Butler v. Dall. Area Rapid Transit*, 762 F. App'x 193, 194 (5th Cir. 2019) (per curiam) ("Assertions that are conclusory are insufficient to support an attempt to establish subject-matter jurisdiction." (cleaned up)).

And, if the party invoking federal jurisdiction fails to establish it, the lawsuit must be dismissed. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Because federal jurisdiction is not assumed, "the basis upon which jurisdiction

depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)); *see also MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) ("Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." (quoting *Getty Oil*, 841 F.2d at 1259)).

Under their limited jurisdiction, federal courts generally may only hear a case if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332.

Federal question jurisdiction under Section 1331 "exists when 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983)); *see also In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) ("A federal question exists 'if there appears on the face of the complaint some substantial, disputed question of federal law.'" (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995))).

The "'creation' test … accounts for the vast bulk of suits under federal law." *Gunn*, 568 U.S. at 257 (citation omitted). But

> "a federal court [is also] able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus

> justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." That is to say, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."

*Perez v. Se. SNF, L.L.C.*, No. 21-50399, 2022 WL 987187, at *3 (5th Cir. Mar. 31, 2022) (per curiam) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005), then *Gunn*, 568 U.S. at 258).

And, in cases invoking jurisdiction under Section 1332, each plaintiff's citizenship must be diverse from each defendant's citizenship, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a), (b).

This amount "is determined by the amount of damages or the value of the property that is the subject of the action." *Celestine v. TransWood, Inc.*, 467 F. App'x 317, 319 (5th Cir. 2012) (per curiam) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).

And, "[f]or diversity purposes, state citizenship is synonymous with domicile. A change in domicile requires: '(1) physical presence at the new location and (2) an intention to remain there indefinitely.'" *Dos Santos v. Belmere Ltd. P'ship*, 516 F. App'x 401, 403 (5th Cir. 2013) (per curiam) (citations omitted); *see also Preston v. Tenet Healthsystem Mem'l Med. Ctr.*, 485 F.3d 793, 797-98 (5th Cir. 2007) ("In determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship.... Domicile requires the demonstration of two factors: residence and the intention to remain." (citing *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954))); *SXSW v. Fed. Ins. Co.*, 83 F.4th 405, 407

(5th Cir. 2023) ("'The difference between *citizenship* and *residency* is a frequent source of confusion.' For natural persons, § 1332 citizenship is determined by domicile, which requires residency plus an intent to make the place of residency one's permanent home. An allegation of residency alone 'does not satisfy the requirement of an allegation of citizenship.'" (emphasis in original; citations omitted)).

"The basis for diversity jurisdiction must be 'distinctly and affirmatively alleged.'" *Dos Santos*, 516 F. App'x at 403 (quoting *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 (5th Cir. 2009)). For example, "an allegation of residency alone does not satisfy the requirement of an allegation of citizenship." *J.A. Maters Invs. v. Beltramini*, ___ F.4th ___, No. 23-20292, 2024 WL 4115280 (5th Cir. Sept. 9, 2024) (per curiam) (citation omitted). And "a 'failure to adequately allege the basis for diversity jurisdiction mandates dismissal.'" *Dos Santos*, 516 F. App'x at 403 (quoting *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991)).

## Analysis

**I.    Montgomery Bey fails to establish subject matter jurisdiction based on a federal question.**

Montgomery Bey appears to have filed this lawsuit in federal court not because she brings claims under federal law but to assert claims and/or seek relief based on authority like "the Treaty of Peace and Friendship of 1936 (in force 1837) between the United States of North America and the Moroccan Empire," which Montgomery Bey claims "is the supreme law of the land under the Supremacy Clause of the [United States] Constitution." Dkt. No. 3 at 9 (cleaned up).

> [R]egarding federal question jurisdiction, so far as [Montgomery Bey] pleads that the Moroccan-American Treaty of Peace and Friendship (or

- 6 -

any other treaty) exempts [her] from federal and state laws, yet brings [her] within federal question jurisdiction, this argument is meritless. *See El Ameen Bey*, 825 F. Supp. 2d at 557-58 ("Plaintiffs shall not assert any claims based on the Barbary Treaties in general or on the Treaty with Morocco in particular, since any such claim would be facially frivolous."). It is contradictory for [Montgomery Bey] to assert that the laws of the United States are not binding and then request a federal court adjudicate the matter in [her] favor. *See El-Bey v. United States*, No. 1:08CV151, 2009 WL 1019999 at *1 (M.D.N.C. Jan. 26, 2009) ("[Plaintiff's] claims are the most recent incarnation of a notorious organization of scofflaws and ne'er-do-wells who attempt to benefit from the protections of federal and state law while simultaneously proclaiming their independence from and total lack of responsibility under those same laws.").

Moreover, [Montgomery Bey] does not allege how the Moroccan-American Treaty of Peace, a treaty entered to protect American shipping interests from Barbary pirates, [could apply to her].... *See Pitt-Bey v. District of Columbia*, 942 A.2d 1132, 1136 (D.C. 2008) ("As its title indicates, [the treaty] provides ... a protocol for any confrontations that might arise between the two countries while at sea, during trade or battle. It does not contain any language suggesting that the United States, or any state or territory therein, does not have jurisdiction over a person violating the law within its jurisdiction."). Furthermore, to the extent [Montgomery Bey] is asserting [that she] is immune from federal and state laws under the Moroccan-American Treaty of Peace, such claims are meritless. *See id.* at 1135-36; *accord El Ameen Bey*, 825 F. Supp. at 545-46. Those who have such immunity are statutorily defined as members of diplomatic staffs or missions. *See Pitt-Bey*, 942 A.2d at 1135-36 (citing 22 U.S.C. § 254a (1)(A)–(C) (2004)). [Montgomery Bey] has not alleged, nor could [she] plausibly allege, [she] is entitled to such immunity.

*Bey*, 2023 WL 5987393, at *7.

## II. Montgomery Bey fails to establish subject matter jurisdiction based on diversity of citizenship.

Where the complaint fails to allege an amount in controversy and raises a plausible inference that each plaintiff's citizenship is not diverse from each defendant's, because Montgomery Bey resides in Dallas and has sued a Dallas County official, the undersigned cannot find that it affirmatively and distinctly establishes

diversity jurisdiction. *Cf. Abdul Hakim Bey v. U.S. Legislature*, No. 17-CV-7569 (CM), 2017 WL 6611052, at *2 (S.D.N.Y. Oct. 25, 2017) (A plaintiff's "purported status as a ... 'Moorish-American' does not create diversity jurisdiction where all parties are domiciled in the same state." (citing *Allah El v. Avesta Homes, LLC*, 520 F. App'x 806, 809 (11th Cir. 2013); *Sanders-Bey v. United States*, Nos. 07-2204, 07-3891, 2008 WL 506328, at *2 (7th Cir. Feb. 25, 2008)); *Knight v. Chatelain*, No. 8:19CV206, 2019 WL 2464789, at *6 (D. Neb. June 13, 2019) ("Knight does not purport to invoke the court's 'diversity of citizenship' jurisdiction, under 28 U.S.C. § 1332, nor could she legitimately do so based on her alleged status as 'a citizen of the Moorish National Republic Federal Government, Northwest Africa.'" (citations omitted)).

## Recommendation

The Court should dismiss this lawsuit for lack of subject matter jurisdiction.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

- 9 -

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: September 13, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE